First case on our call this morning is agenda number 11. Case number 107536. People of the State of Illinois v. Thomas Taylor. Counsel may proceed. May it please the court. My name is Brian Cook and I represent the appellant Thomas Taylor. I would like to reserve a couple of minutes for rebuttal. The issue presented by this case is whether a crankle inquiry is required when a defendant is represented by privately retained counsel. And there are two compelling reasons that it should be. First, this is consistent with the Sixth Amendment, which requires that privately retained attorneys and appointed attorneys be judged by the same standards of effectiveness. And second, a crankle inquiry is the easiest and most efficient way to resolve a claim of ineffective assistance. Rather than going through a time-consuming appellate process or a post-conviction petition, a claim of ineffectiveness, regardless of whether the attorney is privately retained or appointed, can be resolved a lot more easily and simply at the earliest opportunity during a post-trial crankle inquiry where all the parties are present, everyone's memory is fresh, and the judge can ask just a few simple questions to resolve that claim. Because crankle does serve a very useful purpose in resolving claims of ineffective assistance efficiently, it's far better to require them to be done so regardless of whether the attorney is retained or appointed. There's no good reason to create an exception for the large number of cases involving a privately retained attorney. The state has argued that... I don't believe it is. The defendant does retain control there, but the state, for example, has argued that this would interfere with the defendant's right to counsel of choice just to hold an inquiry. But there are two reasons that's incorrect. First of all, it's the defendant who has initiated the inquiry and who has expressed some concerns about his privately retained attorney's representation. That's a good point. Unlike in the crankle situation, there wasn't any request for a continuance for him to obtain new counsel, right? I believe in crankle itself. I believe in crankle the defendant, he filed a pro se motion and did request. I think then his attorney spoke up and requested that he be given a continuance of the request. And also be appointed a different attorney. In Pecoraro, the defendant did not do those things. But regardless of that, whether it's the defendant who's initiating it or not. I'm sorry. Does it make a difference whether defense counsel is privately retained or publicly appointed? Strictly an effective claim pertains to both private and appointed. That's correct. The same standards apply regardless. And the Supreme Court has kind of extended that principle in Mickens v. Taylor to also. So there is no distinction to Pecoraro? Yeah, Pecoraro, yeah. And I would also point out that in Pecoraro, the defendant filed a pro se motion in Pecoraro. And in that case, unlike this case, the trial court did examine the claims in that pro se motion. He examined them under the two prongs of Strickland and decided that that claim didn't have merit. So isn't that the first issue in this case, whether or not there is a claim at all? That's certainly one of the two main issues, yes. And we believe that here Mr. Taylor did all that he was required to do in order to trigger the trial court's duty to inquire. This court has held in People v. Moran and other cases that an inquiry is required. To require an inquiry, all a defendant needs to do is bring a claim of ineffectiveness to the trial court's attention. There has to be a factual basis for it. That's the purpose of the inquiry. If the defendant brings the claim to the court's attention, then the trial court You're saying he doesn't have to somehow inform the judge of the factual basis to trigger the hearing? He has to make a claim of ineffectiveness. It can't just be a simple conclusory claim such as my attorney was ineffective without providing any specifics about what type of claim he's making. Indeed, there's some indication that it needs to be in writing, isn't there? The appellate court has held in some cases that it can be an oral claim. And I think that's a wise holding because a written claim, for example, in some circumstances, it's not going to be feasible for a defendant to make a written claim. In this case, Mr. Taylor didn't learn that he was Class X mandatory and that he might have had ineffective assistance until the very sentencing hearing at which he told the judge in allocution that he didn't know that when he rejected a plea offer to a reduced charge. So he didn't really have a chance at that point to prepare a written motion. He didn't have a chance to hire a new attorney. Tell me whether the record would reveal whether there was any kind of a hearing at all where the private counsel was able to testify and give his view of what happened. There was not. And that's precisely the problem. That's what could have happened had the judge simply inquired as required by Krankel and the cases following it. Then the judge could have just asked defense counsel and the defendant exactly what they talked about during plea bargaining. That's the entire purpose of the Krankel inquiry is to flesh out the facts of the defendant's claim of ineffectiveness to determine whether or not there's potential merit to it. Maybe I didn't read the case closely enough, but I thought that the record sort of indicated that he turned down an offer of a reduced charge so that it may be possible that the trial judge here would have judged the defendant's allegation on their face to be insufficient to warrant any further inquiry. And that's why he didn't raise any questions to the attorney. In some cases that might be true, but in this case it was actually a different judge at sentencing than the judge who presided over the pretrial hearing. So the sentencing judge, since he wasn't present at the time and wasn't handling the case, wouldn't have had any personal knowledge upon which he could have just rejected the claim out of hand. I think that shows the importance of holding an inquiry so that the judge... The record of those pretrial hearings, all that is said about the plea bargaining was the state just mentioned at one court hearing that the defendant had rejected an offer to a reduced charge. There was no discussion on the record about exactly what defense counsel advised Mr. Taylor of the consequences of rejecting that offer. There's nothing in the record to show that defense counsel did tell him that if you're found guilty at trial, you will get a mandatory class X sentence. It seems to me, counsel, that if the counsel did tell the defendant that, you know, if the plea bargain was for three years, that the mandatory was six, any defendant would seem to have taken the plea bargain if he had known. Chancellor, I believe that's true. I mean, to determine counsel's ineffectiveness, one of the things you look at is the strength of the state's case at trial, whether or not, how likely it is that the defendant would have taken that offer. The state's case here was pretty solid, two police officers testifying consistently. You know, the chances of winning that trial are very slim. And when you do get a good offer and you know the consequences are going to be far more severe at trial, yes, I think it is likely that he would have accepted that offer. I would also point out. Can I have a follow-up on that? Sure. It is not unusual for defendants in the predicament that your client was in to want their freedom in total and believe that they can get it. That's true. And the fact that there's a difference between two sentences I don't think absolutely bars the possibility of somebody. I agree. It's not conclusive, but it does weigh in favor. It's something that somebody who's on the outside not facing it can do a lot easier than somebody who is facing it. Sure. And I agree with that point. But I would just point out, it's just one factor to look at, the difference between the sentences, the strength of the state's case and the defense case at trial. Those are factors that might help us determine whether or not the defendant would have accepted the plea offer. And the important fact here is not simply the difference between the sentences. It's whether or not the defendant was properly advised by defense counsel and could make an informed decision about that. His statement at sentencing, along with his attorney's statements at sentencing, indicate that he didn't know that and counsel failed to fulfill that very basic obligation of representation. There were several representations in the record, though, where it was said this was mandatory. There were two bond hearings near the beginning of the case at which the defendant was asking for reduced bond and the state's attorney said, quote, that defendant was ex-mandatory. But there was never any explanation of what that meant. Was he advised that he faced a sentence of six to 30 years? No. At no time in the record was he ever told that ex-mandatory meant six to 30 years. It was just legal jargon. It would have been his attorney's obligation to explain to him exactly what that meant. And his attorney failed to do that. If you look at his statement, he said repeatedly in allocution that he didn't know that. His attorney also made statements indicating that it wasn't until sentencing that she determined that he was indeed class ex-mandatory. She said that there was a dispute. He had three prior convictions, a burglary, a robbery, and a drug case. It was undisputed that the burglary was a class two. And counsel said at sentencing that the parties kind of disputed whether or not the robbery had been pleaded down to a reduced charge and whether or not that would trigger mandatory class ex-sentencing. But she said that any disagreement about that charge was moot because the state had just shown her a copy of a certified conviction for the drug charge showing that it was a class one. So she said that, yes, she was conceding that he was class ex-mandatory. So it doesn't even appear that counsel determined until sentencing that he was class ex-mandatory when she had an obligation to do that much earlier. Can we just look at the record and see if the record, in the record there's support for finding that the defendant's allegations on their face were insufficient? I don't think there are sufficient facts in the record to determine that because without an inquiry we don't know exactly. Can we just look at the record rather than depend upon questions asked by the judge or answers that may have been given or not given by the attorney? I would say no. This Court held in People v. Moore, for example, that when there is no inquiry into a claim of ineffective assistance, the case must be remanded and that there shouldn't be, for example, a harmless error review in that circumstance because without an inquiry there may not be an adequate record to determine whether or not the defendant's claims had merit. Here the record doesn't actually indicate that his claim was facially insufficient. It remains an open question. Without knowing exactly what defense counsel advised the defendant, knowing exactly why he decided to reject the offer, we can't determine whether or not counsel was ineffective or not. It's essentially premature to make that determination without an inquiry. Before we even get to that question, though, I understand that the State's position is there was never a request by the defendant for ineffective assistance of counsel, but they also have an alternative argument that Pecoraro controls on the private versus public counsel distinction. To get to the issue of a crankle inquiry and with our precedent in Pecoraro drawing a distinction, would we necessarily have to overrule that case based on constitutional grounds? I don't believe so. As I said earlier, in Pecoraro the Court did actually examine the defendant's pro se claims of ineffectiveness to determine whether or not they had merit. So in that case the defendant got the exact same sort of inquiry that a defendant represented by appointed counsel would have received. Pecoraro is also distinguishable because in that case the defendant wasn't asking, as we are, for just a simple remand for an inquiry. The defendant was actually arguing that the trial court erred by not appointing an attorney. Well, but in Pecoraro the trial court did hear those claims without appointing new counsel, right? That's correct. And that is a distinction. That is a distinction. The Court essentially, in this case the Court basically ignored what Mr. Taylor said about not knowing that he was Class X mandatory and didn't hold any sort of inquiry whatsoever. So I think that's a very important distinction. Under your argument then, would the inquiry of Pecoraro have been enough? Arguably, yes. There the judge did at least examine the claims to determine whether or not they had merit. So a full-blown crankle hearing isn't necessary? Well, there are lots of ways that a crankle hearing can be conducted. In some cases the judge can just rely on his own knowledge of the record. In some cases if, for example, the claim deals with things that are off the record, the judge might have to talk to defense counsel or the defendant to see if there's a factual basis for the claim. Just a quote from this case. Unlike crankle, when defendant was represented by an appointed public defender at both trial and post-trial motions, defendant Pecoraro retained private counsel to represent him at trial and in post-trial motions. It was not within the trial court's rubric of authority to advise or exercise any influence or control over the selection of counsel by defendant, who was able to and did choose counsel on his own accord. Moreover, the trial judge could not force defendant to retain counsel other than that chosen by defendant. Defendant and his counsel were the only parties who could have altered the attorney-client relationship. Defendant could have retained other counsel to represent him prior to the hearing of his post-trial motions. Doesn't that draw a pretty broad distinction between crankle and Pecoraro, that quote from Pecoraro? I suppose it does, but I think it's distinguishable here, because here we're not asking, as the defendant in crankle did, for the trial court to appoint a new attorney. We're just asking for an inquiry. If the trial court had appointed a new attorney in Pecoraro, like the defendant wanted, that might have interfered with his right to counsel of choice if the court had been making that choice for him. So what if the inquiry would have provided the court with sufficient indicia to get rid of that first attorney? And this court says the only one who could do that would be the defendant himself. Then the court should give the defendant the choice. If the defendant can still afford an attorney, the court should tell the defendant, you have a right to hire a new attorney at this point, or you could perhaps waive the conflicts and continue with your current attorney. You could go pro se, but if you don't have the money to hire a new attorney, you do have the right to have one appointed for you. As long as it's the defendant who's making that choice after the inquiry, then there's really no interference with the attorney-client relationship. It's the defendant who is the one who is choosing who will represent him. And so his right to counsel of choice remains unviolated. How does your Supreme Court case, Micken v. Taylor, affect Pecoraro? Doesn't it kind of follow Justice Clark's dissent back in 1991? It does. It basically says that when we're dealing with an inquiry into a possible conflict of interest, which is exactly what Crankle does, that the inquiry should be the same. It should be equally thorough, and it should be held regardless of whether the attorney is privately retained or appointed. And that's very analogous to this situation. I think it is directly contrary to what happened in Pecoraro, and even more so in this case where no inquiry at all was held. So I think Mickens does support distinguishing Pecoraro from this case and holding that an inquiry, at least, is required regardless of whether the attorney is privately retained or appointed. I would also point out that it's going to be far easier, as I did in my opening, to whether the attorney is privately retained or appointed. It's far easier to resolve this kind of claim in a Crankle inquiry because all the parties are present and everyone's memory is going to be fresh. The alternative is to push these sorts of claims back into lengthy post-conviction petition proceedings or possibly on direct appeal if there's enough of a record. But those possibilities will take a lot more litigation and will use up a lot more judicial resources than just holding a simple Crankle inquiry. I see my amber lights on. If Your Honors have no more questions, I'll retain the rest of my time for rebuttal and conclude by saying that because the trial court conducted no inquiry into Mr. Taylor's claim of ineffectiveness, he respectfully requests that this court remand his case before that inquiry. Thank you. Mr. Chief Justice, Honorable Justices of the Supreme Court, Counsel, may it please the Court. I am Assistant State's Attorney Alan Spellberg, representing the people of the State of Illinois. The trial court in this case properly refrained from conducting any form of Crankle inquiry   because any claim of ineffective assistance of counsel, which is implied from his statement and elocution, is clearly without merit. And most importantly, as the appellate court held, because the trial court had no authority to interfere with the attorney-client relationship between the defendant and his privately retained attorney. As to that third point, under Pecoraro, this court explicitly held that when a defendant is represented by a privately retained counsel, the Crankle rule, the inquiry that occurs in Crankle, does not apply because of the fear of interfering inappropriately in that sacrosanct relationship. The attorney-client relationship is created solely by the defendant when he hires his attorney, and is at the sole control of the defendant if he chooses to continue with that attorney or not. If the defendant is displeased with his attorney, he may fire him at any point, and for whatever reason. Counsel, doesn't he have to, though, ask the court for permission to have a new counsel? Yes, Your Honor, he would have to ask the court permission to have the new counsel substitute in, but he wouldn't need to have permission to fire his attorney. He could then make the choice to go forward on his own or to have a substitute counsel come in. But I think more importantly, oh, excuse me. But if the Supreme Court mandates that a private counsel be judged the same as appointed counsel, then why should Crankle not apply to a private counsel? Oh, Your Honor, clearly, and as we state in our brief, this court, long before even Mickens v. Taylor, recognized the same standard under Strickland v. Washington applies to both privately retained attorneys and appointed attorneys. But the focus which is being lost there is that the Crankle hearing is not one to resolve claims of ineffective assistance of counsel. The Crankle hearing, by its own terms, is solely to determine whether or not there's a potential conflict of interest for the attorney to go forward and argue claims of ineffective assistance of counsel. It is a separate part of the scenario. As this Court stated in Nitz, the sole purpose of that inquiry is to see if there is at least a colorable basis of a claim so that way a new attorney needs to be appointed. But doesn't more preclude harmless error analysis here? Yes, Your Honor, but I'm not asserting harmless error in any way. What I'm asserting, Your Honor, is that in the absence of an appointed attorney, the trial courts cannot interfere with the privately retained attorney. The defendant, however, has the complete authority, the complete right to decide who should represent him at that point. But unlike Nitz, we don't have a record here. Yes, Your Honor, but what we do have is we have the lack of a clear basis of ineffective assistance. And let me just take one step back. Under Pecoraro, the trial court here was clearly within his authority to refuse to engage in any inquiry. The law was clear. There is no basis to reverse that. And Pecoraro, as we state in our brief, is a sensible rule because of the risk of interference with the defendant's right to counsel of choice and the risk of interjecting structural error. But in terms of your point, Your Honor, about the absence of a record, the reason why we don't have a record, and this is the primary point we make in our brief, is that there is no clear basis, there is no clear claim of ineffective assistance of counsel. Unlike Nitz, unlike Crankle, unlike Pecoraro, unlike every other case, Moore, there was an explicit request, an explicit claim made to the trial court of ineffective assistance of counsel, of deficient representation of some sort. There is no such claim in this case. So your view is it has to be an explicit claim. Yes, Your Honor. Because in this case, certainly, implicitly, you could conclude that he was claiming ineffective assistance. After all, if he wasn't, if his claim wasn't ineffective assistance, what was it? Well, thank you, Your Honor. Opposing counsel in his brief specifically calls it an implicit claim. In reading the record, it is possible to see a potential claim for ineffective assistance. But I don't believe the context bears that out. The context of the defendant's statement in elocution was one of regret at being convicted, sadness at having been convicted again. This was his fourth felony conviction. He did not want to go back to prison. He was sad at the thought of not being with his family anymore. These are all the points that are coming through. And he expressed extreme remorse at failing to take a more advantaged plea bargain prior to trial. That's what it was. It wasn't a claim of my attorney misled me, my attorney gave me misrepresentation. It was if only I had realized how great the risks were, I would have made a different choice. But as this Court stated in Curry, that by itself isn't a claim of ineffective assistance of counsel. Dissatisfaction with being convicted does not amount to ineffective assistance of counsel. How do you address opposing counsel's Sixth Amendment argument that you're entitled to conflict-free counsel? I believe you cited a U.S. Supreme Court case for the proposition that that's retained private or public counsel. Yes, Your Honor. And it is true. Of course a defendant is entitled to conflict-free counsel. But what's important to remember in the Krenkel scenario where a defendant is coming forward with a claim of ineffective representation, the conflict is the creation of the defendant. The defendant is the one who's pointing out, I think my attorney was inappropriate. He acted deficiently in some way. And therefore he can't represent me in my attempt to litigate that claim of his ineffectiveness. Unlike in Mickens. Unlike in Siler where the attorney had a conflict because he had professional obligations lying elsewhere. That attorney was incapable of representing the defendant in a way that was free and clear of any other obligations. In this scenario, it's the defendant complaining about his own attorney. He is in control of that. He can either fire his attorney, he can bring him forward in some way. Or he can bring claims through any number of ways we offer in Illinois for bringing claims of ineffective assistance of counsel. Does it make any, the stage at which this case was, when this occurred, was after the pre-sentencing hearing. And in both Krenkel and Pecoraro, it was post-trial motions. Does that play in any way into a distinction? Your Honor, my recollection of the record is that this was made, this statement and allocution, which is now the focus of this court's inquiry, was made at the same date at which the post-trial motion was denied, the PSI was reviewed and amended at the defendant's request, and then sentencing occurred. So it was at the same stage as the Krenkel scenario, just later in that same court date. In the Krenkel scenario, it was he filed his motion prior to the post-trial date. But this was still in the same time frame, in the same court date. And just to be clear, we actually don't make an assertion in our brief that the defendant's motion must be in writing. There is some case law indicating that it should be in writing. This court in People v. Crane, as counsel points out in his reply brief, addressed an oral Krenkel claim. Our claim is not that it must be in writing, but that it must be explicit. Because how is a trial court to know that a defendant is claiming ineffective assistance of counsel if the defendant doesn't actually say that? And I asked this court to carefully read the record, and you will see in his statement and allocution, he never says, my counsel misled me. He never said my counsel gave me bad information. What he says is that while he knew that he could face a period of 6 to 30 years, he never knew that he would absolutely face a period of 6 to 30 years. So clearly he identified that he knew what the sentencing range was that he was potentially facing. But he didn't know that it was going to be a mandatory if he faced, if he was convicted as charged. And the reason why that's an important point is because it's not uncommon for defendants with intent to deliver, as this defendant was, to be found guilty of a lesser charge. And in fact, if you read the record and you read counsel's closing arguments, you will see that she stressed extensively the minimal amount of drugs that occurred here. It was enough to satisfy the statutory requirements for the Class II felony, but she was trying to state that it was a low amount and asking the judge to find him guilty. She didn't say it explicitly, but asking to find him guilty of a lesser offense. And if she had been successful in that, if the judge had ruled that he was guilty of, say, simple possession of a controlled substance, he would not have been facing a mandatory Class X term. And I think that, from the record, from the entire context of the record, bears out what occurred in this case. Because we see a defendant who protested his innocence throughout the entire proceedings, from start to finish, who rejected an advantageous plea offer because he was protesting his innocence, went to trial in hopes of being found not guilty, or from what appears to be his attorney's strategy, to at least reduce the charge. He was unsuccessful. At that point, and only at that point, is when he starts to complain that he's unhappy with the sentence which he is facing, but again, not unhappy with the representation that he received. Moreover, so for those reasons, we don't believe that there's been a clear basis of a Crankle claim. We don't believe that Crankle applies because of Pecoraro. But even more important, we don't believe that the record supports any inference of any sort of ineffective assistance of counsel. The record clearly shows an active and engaged attorney representing her client's interests at all stages. The record clearly represents that the defendant was convicted at a full and fair trial. In fact, defendant doesn't even contest that. The trial which occurred, the conviction which was entered, was without a doubt satisfied all constitutional and legal requirements. Because defendant makes no claim otherwise. But instead, the defendant is claiming that he is entitled to a new trial, or at least ultimately entitled to a new trial if the Crankle inquiry, which he seeks, results in the relief he wants. Ultimately entitled to a new trial because of an unsuccessful plea negotiation. And it's for that reason in our brief that we make the request to this court that it reconsider its holding in People v. Curry, which held that even where a defendant is convicted following a full and fair trial, an unsuccessful plea negotiation, the deficient representation in an unsuccessful plea negotiation, can result in the ordering of a new trial and the resumption of the plea proceedings, of the plea negotiations. And the reason why we ask this court to reconsider that ruling is because it results in a waste of judicial resources and prosecutorial and defense resources in litigating these claims. And it can result in an undue windfall to a defendant because where a defendant is convicted following a trial. To give him the opportunity for a new trial simply because the plea negotiations were unsuccessful earlier allows him the opportunity to get a second chance at the opportunity, to have a second chance at it. And it fails to recognize that while there might be institutional and purposeful reasons for seeking a plea negotiation early in the process, once it has gone to trial, the prosecution especially may no longer have those interests. In particular, we point out in our brief, and this is not an uncommon fact, that we may choose to accept a plea bargain because we want to avoid having to put the victim through a vigorous cross-examination. That is a very important consideration for us whenever we are engaging in plea negotiation. But under the Curry rule, if there has been some mistake or some alleged deficiency of representation during the plea negotiations and the defendant rejects an advantageous offer and goes to trial and is properly and fairly convicted, under the Curry rule he can still negate that claim simply because of the alleged ineffective assistance at the plea negotiation stage. But while the people may have had an interest in avoiding the cross-examination of the victim in the first place, that victim has already undergone that cross-examination and now is at risk of having to undergo it a second time. And so for those reasons, the delicate balance that goes into plea negotiation prior to trial cannot be recreated. And it's for that reason that we would ask this Court to reconsider its Curry rule because it's inconsistent, as we point out in our brief, with the U.S. Supreme Court's view of what the Sixth Amendment right to the effective assistance of counsel is. It is an attempt to ensure the fairness of the trial, the basis of the defendant's conviction. And for that reason, we would ask you to reconsider it. And for all those reasons and the reasons stated in our brief, the people would respectfully request that this Court affirm the appellate court's judgment in this case and affirm the defendant's conviction for possession of a controlled substance with intent to deliver. Mr. Spelberg? Yes. Mr. Spelberg, the defendant seems to be asking that this matter be sent back so that the trial court can inquire into the factual basis of his claim of ineffective assistance. Obviously, if that isn't borne out, that would end the matter. But what happens in the event that there was ineffective assistance? What remedy do you see that the defendant can get? Is it only a new trial, as you seem to be arguing? Yes. Yes. I would think that would be the basis. And under Curry, what Curry specifically said is that in the scenario of ineffective assistance at the plea negotiation stage, meaning being given materially misinformation, then the proper remedy is not only a new trial, but in order to resume the plea negotiation process. And it's our position, Your Honor, that that remedy, which was addressed in Curry, is inappropriate. It doesn't truly remedy the defendant's concern, which was that he didn't take the possible plea negotiation earlier that was offered. And he went to trial and had a full and fair trial. So no one's rights are actually being protected by that type of remedy, because we cannot recreate the original scenario. And in Curry, this Court didn't order that the defendant is entitled to the earlier offer. So in this case, if that would be that the defendant would be entitled to a three-year. Could the defendant be subject to a greater penalty? No, I don't believe he could be subject to a greater penalty, because under our statutes, once you're convicted, if a conviction is reversed on appeal, the most you can get is the same sentence unless there had been new information, which would authorize a higher sentence. But it's clearly your position that you're not required to offer three years of the offer that was withdrawn prior to trial. No, Curry seems to indicate that we are not obligated to do that. At least that's the legal rule. In a practical scenario, I think that there would be a great institutional pressure to resolve an old case by giving an offer that was previously offered by the state. And so I think that the institutional pressures are only to the defendant's benefit at that point. They no longer recognize that there are appropriate reasons to engage in plea negotiation. There's appropriate reasons to have to make a decision by a particular time. And there's appropriate reasons to recognize that the trial which occurs is a full and fair trial, and that that is the basis of the deprivation of the defendant's liberty. And as long as all those things are true, there's no reason to go backwards and to reexamine something that was part of an unsuccessful plea negotiation. And for those reasons and for those stated in our brief, we respectfully request that this court affirm the appellate court's judgment. Thank you. Just briefly in rebuttal, Your Honor, I'll address the state's points about Curry first. The state hasn't presented any arguments showing that Curry has been unworkable in practice, which is often one reason that this court would choose to reverse old case law. For example, cross-comparison analysis under the proportion of penalties clause proved to be just unworkable and arbitrary. But there's no indication that Curry, that these sorts of claims of ineffective assistance have been resolved in an arbitrary or unworkable way. Moreover, the state hasn't presented any new case law or any new legal arguments that this court didn't already consider in Curry. This court considered the position that the remedy in Curry was a windfall, I quote the state there, to the defendant and said that, you know, we're just going to fashion the best remedy we can in this situation because we recognize the importance of plea bargaining. Most cases are resolved by plea bargaining, so it's very important that the defendant have competent advice from his attorney so that he can make an informed decision. If this court were to overrule Curry, that, you know, check on defense counsel's ineffectiveness would disappear. I would also point out the state argues that the Sixth Amendment is just designed to ensure the defendant a fair trial, and that's not entirely true. It's also ensured to design fair proceedings from start to finish. The defendant doesn't just have a right to counsel at trial. He has a right to counsel at all critical stages and has a right to the effective assistance of counsel at all critical stages, and that includes at plea bargaining, which is because most cases are resolved at that stage. It's a very important stage of proceedings. So for those reasons. Mr. Cook, if you do, if the trial judge would find there's ineffective assistance, your only remedy is a new trial. Is that correct? That's correct. And there's nothing wrong with the trial in this case. That's correct. Right. Most cases, most courts around the country have held that the remedy, that there is a valid claim of ineffective assistance here. That is the majority position. There are a handful of courts that have held that specific performance of that rejected plea should be granted, but this court's position was no specific performance. I would also like to briefly address the state's claim that Mr. Taylor should or that a crank or inquiry should be required only when the claim by the defendant is explicit. There are several problems with that position. First of all, this court has recognized that defendants proceeding pro se may not know the facts that are necessary to proving their claim. And for that reason, this court has adopted more relaxed leader requirements for post-conviction petitions. That reasoning applies just the same here. And I think it's even stronger. Here, the defendant didn't learn that he was class X mandatory until the same sentencing hearing at which he told the judge he didn't know that. He didn't have a lot of time to formulate a more explicit or articulate claim. He didn't have time to prepare a written motion or do any of those things. He was put on the spot and did the best he could. The trial judge, on the other hand, with his training and experience and knowledge of the law, is in a good position with a claim of this sort. We have a basic obligation that defense counsel has to inform a defendant of the consequences of either accepting or rejecting a plea offer. There's no valid strategic reason that defense counsel could forego advising the defendant properly about that. That makes the claim of ineffective assistance here very clear. The only conclusion that could be drawn from Mr. Taylor's statement that he didn't know he was class X mandatory is that his attorney, who was the only person who had an obligation to tell him that, is that his attorney didn't properly advise him. So in thinking about this, in this case, you think it should have been incumbent upon the trial judge, when the defendant made this statement, to turn to his attorney, because he was still represented by him at this time. Correct. And say to the attorney, what did you advise this fellow? Yes, that would have been a perfectly adequate inquiry under Crankle. Would that create a conflict of interest if the attorney has to say, well, I told him it was, I told him if he didn't. Well, I mean. If he didn't take the agreement, he was going to the penitentiary. I mean, it seems to me the court in that situation creates the conflict. I think the conflict is actually preexisting. If defense counsel was ineffective, it's that ineffectiveness that creates the conflict, not the inquiry into it. If defense counsel was ineffective, then defense counsel has a personal interest in not raising his or her own ineffectiveness and arguing it adequately. It's that conflict that forces the defendant to raise it on his own and that forces the trial court to then inquire. So I think the conflict is preexisting. And counsel, with regard to that, private versus public counsel, doesn't it put the private counsel in a position to argue his or her own ineffectiveness? Right. And that's the other part of the conflict, is that counsel has an interest in not perhaps adequately arguing his or her own ineffectiveness. And that's exactly what Krenkel requires. If there is a potentially meritorious claim, let the defendant get a new attorney who could argue that claim without that conflict of interest. To further answer my question, after which you responded to Justice Burke, if we said, well, it would be sufficient for the court to make inquiry of counsel, just as we've discussed, then you'd be up here saying, well, then he created a conflict, or she created a conflict. So the defendant's entitled to a hearing with new counsel. Only if the inquiry shows that there's possible merit to the claim. But if the court says to the lawyer, what did you advise this fellow? And the lawyer says, well, I made it very clear to him that if he didn't take the plea, he's going to the penitentiary. It's a mandatory penitentiary sentence. And the judge says, well, I believe counsel and just proceeds on. Aren't we right back where we are today? Perhaps. I think in that situation where the defendant is saying one thing and the potentially ineffective and conflicted attorney is saying another, it would probably be inappropriate for the judge to just rely on what this attorney, who may have a conflict of interest, to just assume that that attorney is credible. And in that case, that sort of credibility determination should probably be made in an evidentiary hearing where witnesses can present it. They can be cross-examined in a more formal manner. In that situation, I think there would be potential merit to the claim if there's some dispute about exactly what was said during plea negotiations by defense counsel. Mr. Cook, the defendant clearly indicated he knew that 6 to 30 was possible. Does the record show where he got that figure? Was that from the judge at the time of sentencing? The record doesn't show that. So he does know there's 6 to 30? Well, at sentencing it was said, perhaps by the state in aggravation, I believe, did say the sentencing range here is 6 to 30. So at that point he did know, but there's no indication that he knew at the time of plea bargaining. I would also point out one final point. Even if he knew it was possible, the state argues that he knew that 6 to 30 was a possibility when he plea bargained from his statement and elocution. If he knew that it was possible but not mandatory, counsel still would have been ineffective in that situation because counsel would have been giving him incorrect advice about the sentencing consequences. It wasn't just a possibility. If he was found guilty as charged, a classic sentence was mandatory, and if he was told it was merely possible, that would have been inaccurate advice and would have been ineffective. So if Your Honors have no more questions, I would again ask that the case be remanded for a current clinical inquiry. Thank you. Thank you, counsel. Case number 107536.